I'll be ready for you whenever you'd like, whenever it's convenient. Thank you, Your Honor. I apologize if I cough through this whole thing. Sinus and allergies have reared their head against me. So maybe try to speak right into the microphone. I will do my very best. Thank you. May it please the Court, my name is Jennifer Tully and I am here today representing the appellant Judge Louise Goldston, family court judge from Raleigh County, West Virginia. And we are here today because Judge Goldston held an unorthodox hearing in an effort to cure Mr. Gibson of his flagrant contempt of the court's prior orders and to avoid jailing him. The plaintiff, Matthew Gibson, was a party to a divorce action in the family court of Raleigh County, West Virginia before Judge Goldston. On September 18, 2018, the court granted Matthew Gibson and Carrie Gibson a divorce and adopted a settlement agreement between the parties regarding the property distribution. The plaintiff's ex-wife subsequently filed a petition for contempt, alleging that he had not turned over certain items of property as determined in the settlement agreement or that some of the items that he had turned over had been damaged in the process. A hearing on that motion was held on March 4, 2020, at which the plaintiff appeared pro se. Judge Goldston offered multiple times to continue the hearing, to which he declined. During the course of that hearing, the motion for contempt hearing regarding the property, Judge Goldston paused the hearing, requested his address, and they moved to his home to continue the hearing to determine whether certain disputed items of property were there. Upon arrival at the plaintiff's home, the plaintiff immediately approached Judge Goldston and made a motion to disqualify. The judge denied his motion as being untimely. She then realized that the plaintiff was attempting to record the interaction and ordered that the recording be ceased because they were in the middle of a court hearing and family court proceedings cannot be recorded. The plaintiff then verbally refused to permit any persons to enter his home without a search warrant. Ultimately, though, he did concede and allow people into his home. And thereafter, the parties entered the plaintiff's home, and the plaintiff's ex-wife was permitted to locate certain items which had been allocated to her in the divorce settlement. Could I ask you a question, interrupting your flow? Sure. It comes at the correct time of your flow. Do you have any authority under West Virginia or any other law that suggests that a family court judge can conduct home visits? Your Honor, the judge believed that she... First answer my question, and then you can tell me about what the judge believed. Is there any authority for that? Well, I think the way I can answer your question is telling you where the judge believed that authority came from. And it's your position that it does come from that? Yes. Okay. From West Virginia Code 512A9B, which provides that a family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant. Sanctions may include but are not limited to seizure or impoundment of property to secure compliance with a prior order. So the judge... Are you talking about searching there? Your Honor, our position... Supervising or conducting. She was in there supervising the search. She was supervising... Inside the house. Inside the home, but no one was searching. And in fact, when the motion was made by Mr. Gibson's ex-wife to be able to go look for property, the judge denied that motion and told her no. I'm surprised at that response. I thought that... First of all, preliminarily, I don't think that the West Virginia Supreme Court backed you up on this and its disciplinary proceedings. Second of all, how can you say she was merely supervising when she was there going item by item as to what could be seized and what could not be? Didn't that move from supervision to participation? Well, Your Honor, they had a list of the property that had not been turned over. She was there... Checking things off. Checking... It sounds to me like she's participating. She... Once they entered the home and they went downstairs, the judge took a seat in a chair and we'll call it the family room where the DVDs were. It was supposed to do with the instructions that were given. Here, this item should be taken. No, we don't need to take that item. Isn't... Didn't that make her a party, a member of the search party? No, Your Honor, because again, there was no search. They had a list of items that had not been turned over. The judge sat down... How do you say there was no search? Because they didn't actually search. When the ex-wife asked if she could search, the judge told her no. You have to know where these items are. And in fact, it was... So I think maybe we're quarreling unnecessarily about search. So I say to my daughter, would you go upstairs and search for my black purse? I think it's in the second drawer on the left. Okay, so I know where it is, but she is being sent to search. So I think that distinction is really not so helpful. This is a search. They're looking for items and finding them. I think we're going to have to agree to disagree on that, Your Honor. Okay, but you have to work with my... I get to make the call. I appreciate that. They were there on a contempt motion, and the judge was attempting to help Mr. Gibson rid himself of that contempt. When they walked in the home, it became apparent that Mr. Gibson, in fact, was in contempt because the pictures that he had been ordered to give to his ex-wife 18 months prior were hanging on the wall. At no point did he say, oh, no, you can't have those. Those are mine. In fact, he went over, took one off the wall, and walked over and gave it to his ex-wife. When they went downstairs to deal with the DVDs, the judge sat herself down in a chair. The record revealed that this was a normal practice of hers. It wasn't just a one-off related to contempt motions or something like that. I understand that this was part of the routine way in which she conducted the office. I don't believe it was routine in that it happened often. It happened before. It had happened before, and it was not limited to only Judge Goldston. It was a practice within that family court circuit. I believe she stated that in, I think it was 28 years, she had done maybe 11 of them. Typically, it was at the request of counsel. This obviously was not at the request of counsel. The question I have is whether this is a basic violation of the separation of powers and whether this individual made herself a part of a law enforcement team. Certainly, a judge can order the production of documents. They do it with a subpoena all the time. They prepared to say they could order a search. At some point, it passes from ordering a search to actually being part of conducting the search. None of this took place in the courtroom. The judge wasn't wearing a judicial robe. It was a bit of an informal situation because, as I understand it, she didn't even have shoes. Well, Your Honor, she took her shoes off as they entered the home because she was trying to be polite. When you put all these things together, somebody conducting a shoeless search outside the courthouse with no robe or whatever, no adversary proceeding, I could repeat what I said. It seems to me she may have just made herself part of a law enforcement team, and that's not her role. While I agree that becoming part of a law enforcement team is not her role, I would disagree that that is what she did. Courts hold hearings outside of courtrooms all the time. Courts travel to law schools and hold hearings. The fact that the judge and the parties travel to her home... And they have shoes, and they're not in a private home. There's a bit of a difference between going to a law school and hearing an argument and being in a private home during the course of a search. I think what's key to remember here is, Your Honor, is that the parties continued to treat Judge Goldston as a judge. They made motions before her. They abided by her rulings. Again, she did not search. No one searched. They simply went, gathered the property that had been ordered to be dispersed 18 months prior. What did they emerge with the search from the... We can call it what you... I like to call it a property distribution. Was any property taken out of the house? The ex-wife was able to gather the pictures that she had been ordered to receive and DVDs that she had been ordered to receive that Mr. Gibson had not given her. It was not only a search. It was a seizure. It was, again, enforcing the motion for contempt that Mrs. Gibson had filed with regard to these property items that she had not received in the 18 months that it had been ordered to be provided to her. This was simply enforcing the order which we believe is permitted under West Virginia Code 51-2A-9B. Why didn't the West Virginia Supreme Court go along with you? Well, Your Honor, I think that is more along the lines of they were not looking at it from the same lens that we are today. They are looking at it as to whether or not she violated judicial canons. And I think that's different. But it's related. It may not be preclusive. I don't think a disciplinary proceeding in state court is preclusive of a suit for damages in federal court under federal law. Those are different things. But the view of the West Virginia Supreme Court and of the judicial canons is obviously related, even though it may not be controlling, to what happened. Well, I think what we have to remember is that the Supreme Court of West Virginia did specifically find that her actions were related to the administration of justice. How often is all this stuff going on? I just, I don't, I mean, I haven't heard of that many situations where judges are running around into private homes informally dressing and participating in a, whatever you want to call it or whatever I might want to call it. You're certainly right to make the point that a judge is entitled to hold a hearing or what have you outside of a courtroom. That happens sometimes. But this isn't a hearing. This is not, it's not a judicial proceeding, is it? I believe it was, Your Honor. It was a continuation of the hearing that began in the courtroom. They then simply moved the location, continued the hearing where the parties made motions. This is an enforcement action. Normally, even with judicial decree, the executive branch enforces. We don't, we can't enforce our own mandate. We can't get out on the street. We can't conduct an arrest. We can't ourselves place leads on bank accounts or whatever. That's normally for the enforcement end of judicial decrees. It's normally left to the executive branch of government, isn't it? Well, again, I believe the judge at no point, as did the West Virginia Supreme Court, they did not believe at any point did she, her actions were taken as a judge for the administration of justice. And I believe she was conducting the hearing of the motion for contempt. She simply moved the location. And then when they returned to the courtroom, she went on the record, made a record of what had happened, gave the parties an opportunity to disagree and to object. This was a hearing. All that happened that was different is they moved the location of the hearing. Well, also what happened, and what I'd be interested in your talking about, is whether there's any Fourth Amendment authority for the proposition that an official who is present for a search and gives orders but does not touch anything is not participating in the search. Those are the facts here. The best facts for you. I do have that, Your Honor. The Heeler case. If you give me just a second. Heeler versus New York. In that case, the judge entered a movie theater, purchased a ticket, went in, watched a movie, determined the movie to be obscene, obtained a warrant, had the police obtain a warrant, went and seized the movie without any kind of a hearing. And the court allowed that and said that the judge did not. Where might I find that case? What jurisdiction is it from? You said New York? New York. Back up to the Second Circuit? Yes, ma'am. It is 413 U.S. 483. And it is cited in our- Say the name for me again. Heeler, H-E-L-L-E-R. And that is cited in our brief. Okay. I will grant you the line is not always clean. I mean, we've had situations and cases where the judge, for example, visited a crime scene to see for themselves what had happened. This happens on occasion where particularly in criminal law, the judges read or had cases where the judges actually went to the crime scene and looked at the crime. And so you make a fair point that, you know, there's no cut and dried line of demarcation. I understand that. It's sort of a matter of degree. And this seems to me going a step too far to accompany law enforcement during the course of a search and pointing out what items can be taken and what items can't. It seems to me these things are matters of degree, and I wonder whether this is just a step too far. But I understand the points you're making. I just am concerned on the facts of what happened here. Well, I think, Your Honor, we have to remember the judge has been punished for this. She was censured and fined. She was reprimanded by the West Virginia Supreme Court of Appeals. But to take away her judicial immunity for doing something that she did not believe was in clear absence of her jurisdiction and opening her up to monetary damages. I don't think her judicial immunity, I think that when you say she has been disciplined and so on, it is not something in her favor for asserting judicial immunity here. Rather, it's something that would suggest that she's not entitled to judicial immunity for these acts. I think the fact that she was punished shows that her actions were taken as a judge. If she had not been acting as a... Or that they were extrajudicial. You can be punished for that. But what the... If you are a judge and you commit extrajudicial acts, acts that are inappropriate for a judge, you can be punished for them. What the West Virginia Supreme Court found, though, was that her actions were taken for the administration of justice and in her public persona. That is a judge. And that, I think, allows us to permit her to have judicial immunity. So, since she's already been censured and everything, this is all about money damages? This is all about money damages, yes. Okay. All right. If we have... If our panelists have further questions, or had otherwise, I want to thank you, Judge Greger. Do you have a question for counsel? No, I do not. Thank you, Your Honors. All right, Mr. Giacomo? Giacomo, Your Honor. I'm happy to hear from you, sir. Thank you so much. Good morning, and may it please the Court. My name is Patrick Giacomo of the Institute for Justice, here on behalf of Appellee Matthew Gibson. As the panel has already discussed with my friend, in 2020, now former West Virginia Family Court judge, Louise Goldston, led the search and seizure of property in my client's private home over his strenuous objection and repeatedly through threats to have him arrested if he did not allow the search party to conduct the search that it did. In so doing, Judge Goldston, as confirmed by the West Virginia Supreme Court and the district court in this case, stepped outside of her judicial role completely, and importantly, violated the separation of powers in her basic jurisdiction by taking law enforcement actions that, as the West Virginia Supreme Court has articulated, are... seizure of certain items. What was it? Was it inside of a courtroom, or what... What precise acts do you point to that were extrajudicial? Sure, so the main extrajudicial act was Ms. Goldston going into my client's home. As the video shows, she was the first person into that house after my client opened the door and went in. You say that even if they had never collected a single item, that the entry into the home would have been an extrajudicial act. That's correct, Your Honor, because that crosses the threshold historically under any definition of what a search is, whether you're looking at the Fourth Amendment or common law trespass, or just the colloquial understanding of a search. She walked into a private home and is there observing and violating my client's expectation of privacy. Items were removed from the home, were they not? That's correct. So that was an additional problem. Correct, that's then a seizure of those items, and the search obviously continued to allow for those items to be located in the house and then taken, and just to give you another piece of evidence from the video, Judge Goldston is the one who leads the entire party down into the basement where she believes to find and then does find the DVDs that are then sifted through by my client's ex-wife. Counsel, let's assume that it was a search. There's another part of the Fourth Amendment. It's not just all searches, is it? What's the qualifying word? Unreasonable, Your Honor. Right. It has to be an unreasonable search. So assuming it was a search, the question here is whether or not it's unreasonable. Now, your client had already been ordered to give these properties over to his former wife, correct? There is some dispute about the specific properties at issue because the properties that were identified in the original settlement. That's why judges settle disputes, don't they? Correct. And the judge had put that into a letter, a list of things that were ordered to be turned over, correct? That's correct. Did your client represent to the court that he had turned all those things over? No, Your Honor. My understanding is that on the day of the contempt hearing that then stopped and became a search party, there were items on the list that he had not turned over. There were additional items that were turned over. So he admitted that he had items in his home that had not been turned over. I don't know if that discussion was had in the hearing. That's important. It determines whether or not what happened was unreasonable, right? No, it's not, Your Honor. Why not? This was the search of a private home without a warrant. As the Supreme Court has repeatedly said, that is presumptively unreasonable. That's presumptively unreasonable? To search a home without a warrant, yes, Your Honor. A warrant comes from a magistrate, right? It comes from a neutral judge. No, from a magistrate, right? Yes. And this is a judge who has already ordered these properties to be turned over. So you're telling me that a judge can't effectuate her order? She can effectuate her order, but she cannot enforce it by herself being involved in a search and seizure. She could have issued a separate warrant that might have been problematic but wouldn't be relevant for judicial immunity purposes. First, does your client even have a right in those properties? Well, first, Your Honor, he certainly has a right in his own home, which was violated by this search. But a number of the properties that he took were properties that he owned that were not owed to his wife and, in fact, some that were owned by his girlfriend. And so you have a number of different violations that occur throughout this search. What's the violation? What's the violation, you said? Well, there's the violation of the Fourth Amendment by simply entering his private home without a reasonable basis to do so. Well, that's a reasonable basis. Aren't you contempt of court, right? Sure. And we even allow judges to even put people summarily contempt in jail immediately. That's correct, Your Honor. But in those cases, the judge does not step down from the bench and handcuff the person and walk them to the jail cell. Would it matter? Yes, it would, in fact, because that would be a constitutional violation if the judge says, I'm committing you to jail right now, and I'm going to step you over there myself to jail. That would be a constitutional violation? If it's conducted by the judge, it would be an action that's taken without the protection of judicial immunity. And that's exactly what the Eighth Circuit just held. What part of that would be not in the purview of the court to do that? The court has equitable powers, correct? It does, Your Honor, but the court does not have the executive power to actually carry out any orders it might issue. And this is exactly what the Eighth Circuit just held in the Rocket case, which we submitted under a 28-J letter, where a judge took two children, walked them to the jail, and had them put in jail. And the Eighth Circuit said, you, of course, can order people to be held in contempt and jailed, and for that you're entitled to judicial immunity. But when you yourself are the ones who put them in jail, you are no longer protected. You execute. Correct. You have now executed it, Judge Motz. And in executing it, you have stepped outside of the most basic and fundamental understanding of the judicial world. Is there a precedent that's binding on this court that says that? Well, you have, for instance, the Forrester v. White case by the United States Supreme Court, where it says if a judge fires a probation officer, that's still not a judicial act, that's administrative. And so an administrative act is an executive act. And so when you're doing executive acts, even if you happen to be a judge, you are not protected by judicial immunity. Well, that's apples and oranges in terms of the facts of that case. Sure. The best case in terms of the factual similarities is the Lohi case that we cite. And, of course, that's not a judicial immunity case. But it's a case where the court says the reason why this is a constitutional violation is because you stepped out of your judicial role as a neutral arbitrator and you became a member of the search party. But a judge is not neutral once she makes a ruling and an order. See, this is not a case where she says, okay, well, I'm just going to say, you don't get a chance to talk, and I'm going to rule. That's different. Here she has already ruled. You don't have a right to this property. And I'm going to make sure that rather than later on, hypothetically, of course, you have arguments when I'm not around and have problems, and they can be serious problems, because, again, it's hypothetical, not this case. But some of the most dangerous type things happen in judicial family courts because there's a lot of emotion. So, listen, let's get this straight right now. What is it that you have in this home that I've already ordered that doesn't belong to you? And let's get it done right now. I mean, is that not an equitable right of the court? How does that become executive? She's enforcing a judicial order, and she's a judge. And she's already ruled. She doesn't have to be a neutral arbiter because she's already ruled. So tell me, how does that violate the Constitution of the United States? Well, again, we're talking about whether she's acting in a judicial role, not the constitutional violation itself. It's important to respond to Judge Gregory's question. I think what you would say, this is a violation of separation of powers, that one branch of the government enforces. Another branch gives the order. She gave the order. Another branch enforces the order. That's the way the Constitution is written. That's absolutely true. And that's why judges don't enjoy judicial immunity when they do something that is not their role. Yes, and to make this a more nuanced point, there are situations where judges do things that they're legally allowed to do where they still step out of their judicial role. And so a good example of this is the Forrester v. White case that I just mentioned, but also a case called Supreme Court of Virginia v. Consumers Union. And in that case, which was about injunctive relief under Section 1983, the U.S. Supreme Court looked at the State Supreme Court of Virginia, which had the power to promulgate bar rules, to enforce them, and to adjudicate them. And it said in promulgating those rules, which you're allowed to do under Virginia law, you're still not entitled to judicial immunity. You might be entitled to legislative immunity. And when you enforce those rules, that's an executive action for which you're also not entitled to judicial. One of the points that my friend Judge Gregory made was that the Fourth Amendment doesn't just prescribe searches and seizures, but only unreasonable searches and seizures. And I guess your response would be that the prohibition against unreasonable searches and seizures is a prohibition directed at law enforcement. It doesn't say anything about the judicial role. It says that the law enforcement role must not be an unreasonable one. That's correct, Your Honor. But I think the broader point is that a judge simply cannot undertake the executive role at all under the separation of powers, as we just discussed with Judge Motz. So instead, rather than being able to do what she did, she could just say, I'm going to give you a year in jail for not turning them over. If she had done that, Your Honor, she certainly would be entitled to judicial immunity. Nobody would be fine with that, right? You wouldn't be fine with it, sir. There are a lot of things that can be done illegally by a judge for which they're still protected by judicial immunity. This is kind of the principle articulated in Morales v. Waco from the Supreme Court, where a judge ordered bailiffs to bring someone into the courtroom and use excessive force in the process. The court said, even if using excessive force is unconstitutional here, the fact that this was a judicial act in ordering someone brought into the courtroom is what protects the judge, not the constitutionality of the action. And you can compare that, for instance, to the Thompson v. Gregory case in the Ninth Circuit, where a judge actually stepped down from court and physically removed someone from the courtroom and then beat them in the hallway. And the Ninth Circuit said, you could have ordered a bailiff to drag someone out of here. And even if the bailiff had used that force, you would be judicially immune. But because you crossed that line from... No, we see that in the 1983 suit. I mean, the judge is still, even though not protected, argumentatively, by judicial immunity, can still claim other kinds of immunity, for example, qualified immunity. And I don't see any impediment to the judge saying, I'm entitled to qualified immunity because the law wasn't clear. So the important thing is that even if they're not in judicial immunity, that doesn't strip the judge of the ability to claim other types of immunity, in this case, qualified. That's true, Your Honor. But I will point out that we're not here on a claim of qualified immunity. And if the judge had claimed qualified immunity in this case, she should be denied that immunity because one of the thresholds... You know, that isn't before us. I thought the sole question before us was not a qualified immunity question. We were just bringing that up by the fact that it doesn't, not to suggest that it does or does not have merit. But we don't need to reach that. All we have before us is what I think is a fairly narrow question of whether there's an entitlement to judicial immunity here. And we say it doesn't strip the judge of other types of immunity, but we don't need to go into those. That's correct, Your Honor. This, as you said, we're on interlocutory review. And so the jurisdictional ambit here is extremely narrow. And the question is just, was there judicial immunity? For instance, if the district court here had decided this case exclusively on the Fourth Amendment issue, then Ms. Goldson wouldn't have even been able to appeal in an interlocutory posture. She would have to wait until there was a final judgment. We're here so quickly because we're here to talk only about judicial immunity. Let me ask my fine colleagues if they have further questions. Judge Gregory, do you have some further questions? No. No further questions. Thank you. If I could just add one more thing, Judge. I've been where you are. The judge tells you to go. Fair enough. You're right, Judge Motz. I will sit down. Thank you so much for your time. I appreciate it. I think that might be the wise thing to do. Ms. Tully, you have some rebuttal time as well. Yes, Your Honor. Again, I think it's important to remember here that Judge Goldston was trying to enforce a motion for contempt order. She was what? Trying to enforce her order based upon a motion. The enforcement is the problem. Well, the measures she took were less coercive than what she could have done. I understand that. But she's not allowed to enforce. What her judicial function is is to issue the order and some other branch enforces. But what she ultimately obtained was resolution of the issue, which really is the goal of the court, is to resolve an issue. Let's just talk about this case going forward. And suppose that we would find four U. And then it would go back to the trial court. And the trial court would decide what the money damages are. And then what you are suggesting is the trial court could then write a check and deliver it to you or deliver a government check to you because he would be enforcing the order. But that's not the way it works. Or if you wanted an injunction and you would ask the court and the court would rule yes, you're entitled to an injunction, the court doesn't go out and enforce the injunction. The injunction is you have to keep this person off your property. If you need enforcement for that, somebody from the executive branch comes and enforces it. The court doesn't enforce it. Well, I think, Your Honor, what the judge said is we're here on a motion for contempt. You were supposed to have given her this property. We're going to go do that. Because exactly what Judge Gregory said, there were going to be problems that arose when they went out to get the property. To follow up on Judge Meisler's question, I may have the noble confused, but have you read the Federalist Papers and the Federalist Papers number 78? I think Alexander Hamilton wrote that. I'm fuzzy because it's been a long time. I've seen Hamilton, but I don't know that I can say that for the Federalist Papers. You know he's a good guy. My recollection is, and it's hazy, is that Alexander Hamilton said in 78 that the judicial branch was, and it's too bad in a way, but it was the most endangered branch or the most vulnerable branch, and then Hamilton goes on to make the point that the judicial branch doesn't have the power of the purse, which is Congress, and then he goes on to make the point that it doesn't have the power of the sword, which is the power of the executive. And the way in which Hamilton parses that out seems to me to have some relevance today. I mean, it may have been a defect in the way that the framers framed the Constitution. Perhaps they should make provision for all kinds of judicial armies and people who could ban out into the countryside and enforce orders. But it wasn't set up that way, really. And I wonder, it does seem to me that that particular statement that Hamilton made has some relevance. Well, I think we have to agree that the way Judge Goldston went about this is obviously an unusual and unorthodox manner of having a hearing. The measures she took were less coercive than what she could have done. She could have jailed him. She could have fined him, but that would not have resolved the property dispute issue that she had already ordered 18 months previous. I just think that to deny Judge Goldston immunity in this case sends a loud and clear measure to other judges. Don't work with litigants to cure them of their contempt. Just jail them. Just fine them. Don't try to find a different solution. Talk to them about it. Supervise a negotiation. You can do all that. She didn't do that. She didn't do anything that we recognize as a judge in ordinary course doing. Over the course of 18 months, I believe that had happened. And there was this was an ultimate resolution. I think that's the most important thing in the world, that we can recognize the separation of powers in the United States Constitution because this matter is so important it has to be resolved in this matter. You know, it's a hard argument to make. Thank you, Your Honors. Oh, I was just wondering since Judge Wilkinson, my good friend, brings up Hamilton, and he's right. Hamilton did talk about no purse, no sword. But it did talk about something about it did have within its bailiwick justice. You know, I just remember when you were talking about judges, there's an iconic picture of Judge Marich who was a great judge right in this court, this house. He was down in my hometown of Petersburg doing desegregation cases. I remember him being down at the school. I guess he wanted to see the Negro children who were the subject of all this thing that was clamoring in the courts and tearing our country apart in terms of whether or not Negro children had to be separated in schools. And he was there in the school. I think it was powerful. I have nothing further. Do you have further questions? Nothing.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Diana Gribbon Motz